Please be seated. Madam Clerk, please call the case. 310-0521 in re Marriage of Duane Noakes, Appellee James O'Kasich vs. Joanne Noakes, now known as Joanne Bullock, Appellant James McAtelly. Thank you for your patience. We're a few minutes late when we were traveling from Starbucks. You may proceed. Yes. May it please the court, opposing counsel, and members of the public, my name is James McAtelly. I am the attorney for the appellant in this case, Joanne Noakes. This is in re the marriage of Duane Noakes and Joanne, I'm sorry, Joanne Noakes. And it's brought before your honors today on an appeal regarding a motion to modify or reform the marital settlement agreement that was entered into by the parties. The parties in this case were married on September 1st, 1987. They had a 17 year marriage before there was a petition for a dissolution of marriage filed in August of 2004. The basis of the appeal here deals with whether or not the judgment needs to be vacated before the marital settlement agreement can be enforced with the intent of the parties. And when I say that, your honors, I mean that the statutes in this case are 502, section 502 of the Marriage and Dissolution of Marriage Act, and 510 of that same statute. And the statements are in the 502 section that a settlement agreement is binding unless the court finds that the agreement is unconscionable. And that's what I bring before this court. A significant change of circumstances occurred where the husband had settled a personal injury lawsuit that accrued during the party's marriage in 1993, 1994, and 1995. That personal injury case was being litigated for a substantially long time period. And at the time that the dissolution of marriage was entered in December of 2004, there was no mention of that personal injury case because it had been dismissed by the trial court. And the parties themselves really did not know that there was an appeal pending, and that appeal would take several years. Well, that appeal was pending, and it was successful by the Epley's counsel. And that case was reinstated, and it received different case numbers. Nobody really could follow it. And it went up on appeal again after it reached trial. But the divorce was in 2005, wasn't it? The divorce was in 2005, Your Honor. That is when the judgment of dissolution of marriage was entered, and that incorporated the marital settlement agreement that was reached in December of 2004. And there was a subpoena issued on your client in 2006, correct, dealing with the personal injury case? We're saying no, that it was 2009, but they're alleging it was 2006. So in the facts, I guess most likely to them, even if it was August of 2006, we're arguing that the court still had jurisdiction to hear this matter. Because knowing that there is a case does not mean that there's a change in circumstances. It's still a moot issue because there is no value to that PI case until there is a settlement. In other words, throughout this entire matter, the case had been dismissed, dismissed, dismissed, appealed, appealed, appealed, and then brought back, and then finally- But isn't the methodology to handle something like that is to reserve that issue? When you reserve that issue, I'm not sure what Your Honor means. If you bring a motion before a court, a court will strike it as moot, since there is nothing to- I'm talking about in the divorce case. You were aware at the time of the divorce that there was a personal injury claim. And then, as you say, the procedural history was such that some things got dismissed, appealed, and so forth. But if there was a chance that something was going to be a viable claim, a potential viable claim, it would have been easy to reserve that issue. My client did not know that it had been dismissed. My client knew that the case had been dismissed and thought that it was no longer valid or binding or existing. Was she represented during that? She was. And I don't believe that attorney had any knowledge of a personal injury lawsuit. Nothing was disclosed on any pre-trial documents. And it was thought that it was non-existent, because it had been dismissed. There was nothing in the marital settlement agreement that said, should this case be reinstated, the husband retains 100% rights to this property interest. And as a case that we're stating here, if the document is blank, it does not state anything about that PI case. It's, I think, normal to assume or conclude that neither party knew there was a PI settlement at the time that this dissolution of marriage or marital settlement agreement was executed. And the first knowledge of that? First knowledge of it came to my client when there was a settlement in 2009. And how are you using the word knowledge? Knowing that there was actually a personal injury case that was still viable and still pending, still existing. And again, I asked the court to look at the other issue in this case. Okay, so let's say she knew it and blew it. Well, what about the unconscionability issue here? When we now look at the marital settlement agreement, and he takes this personal injury suit 100%, it's a substantial monetary value. How is that fair or conscionable now, this agreement? Well, part of the purpose of 1401 kinds of issues in the judgements, there has to be some finality to certain cases. Correct, Your Honor, and I would agree with you if, in fact, the issue in this case was I'm not satisfied with the marital settlement agreement that I entered, I want to change it. What we're having here is a case where, Your Honor, there's certain facts that I did not know about and there is a substantial value to that asset, whether or not it was intentionally withheld from me or accidentally withheld from me, it was withheld from me, meaning Joanne knows. And I have a right to a fair share of that marital asset. Are you contesting that in August of 2006, there was a subpoena for work records? There was a subpoena for work records. It was never served upon Joanne Oaks. There was a subpoena that was served on her in March of 2009, subsequent, after they found her new location. And that wasn't anything that was argued in the courts at this time. And again, what we state is, if we take that August of 2006 and we say there was a subpoena that was sent on Ms. Joanne Oaks, what knowledge or damage is there at that point, what knowledge does she have? She has knowledge that there is a PI case that has been dismissed on numerous occasions and is now pending. Should she file something and spend the money and the effort and the time now when there may not be a recovery, because there's no knowledge as to what's going to happen. If there's going to be a dollar value at the end of that case. But that's sort of necessary to preserve a claim, isn't it? I would state that it is not, and one of the reasons that I state to your honor is the case regarding Hall that I cite. I think that the court is doing or using that 214.01, but not using that 214.01. What they're doing is they're saying, hey, we can enforce an agreement for the true intent of the parties. And if the true intent is usually to make a fair and reasonable distribution of the marital assets, we're going to reopen this case and we're not going to vacate the judgment. But we're going to change the marital settlement agreement so that it comports with the party's intentions. That's what we're saying that we're trying to do here. What we're saying is this 214.01, is that a necessary requirement to get back and to vacate or to open up a marital settlement agreement? They're two separate and distinct documents, marital settlement agreement and a judgment. And the statutes speak about the marital settlement agreement, and they say the court retains jurisdiction. And they can do what they want if they find that this judgment or marital settlement agreement, I should say, is unconscionable. And that's what we're trying to tell the court. This marital settlement agreement on its face in 2005 was fair. Now that the court knows that they're in August of 2009, four years later, four and a half years later, there is a substantial asset that has not been divided. What the husband's saying is, well, it has been divided. I get everything else if it's not mentioned in the marital settlement agreement, because it's my PI settlement. I was the one injured. That argument really is not valid. It's a marital asset. And if it is not mentioned in the marital settlement agreement, I think the court has jurisdiction until somebody brings it before their attention. You said earlier that she did not get served. We're saying she did not get served. In 2006. Now, reading the briefs, that was my understanding that she wasn't. What evidence, did she deny that, or was there no return on that? I don't think we ever addressed that issue. That was the basis of the 619A9 motion, and we took that as a true and accurate representation. What we stated to the court is, even if that is true, the statute, if we're going to say that we are bound by a two-year statute of limitation from the knowledge of this asset, the two-year statute of limitation does not begin to run until there is a damage or an injury that you become aware of. By knowing that there's a personal injury case that may have no value, there is no injury. Once there is a value that is associated with that personal injury lawsuit, now there's a damage. The husband gets 100% of a sizeable settlement, and the wife gets nothing. That, then, the court can look, is that marital settlement agreement unconscionable, or is it fair and equal? Well, at the time of the divorce, she knew about a claim, I feel is right. No. No, did she know that he was injured? She knew that he was injured, and throughout the marriage, he was not working. She was paying his medical bills, was paying for the lifestyle. Because of this injury. But the case was dismissed. And they were litigating that. Well, they had been litigating that case for some time, and in May of 2003, it was dismissed. Okay, and they were litigating that, right? Well, it was dismissed, it had reached a trial stage. And the defendants had did a motion in limine striking the plaintiff's extra witnesses. And the court granted that motion in limine, and they lost that case. After they presented their evidence, they didn't have those experts, there was a judgment in favor of the defendant. That is all my client knew. My client did not know that, in fact, the plaintiff or the husband's attorney at that time filed an appeal. And two or three years later, that appeal was granted in favor of the plaintiff, and the case was reinstated, and a new trial date was set. See, that's what I'm having difficulty understanding for the purposes of 1401. I mean, aside from this subpoena thing, there was the knowledge of a claim. There was a knowledge that there was a claim that, there was knowledge of the injury. There's knowledge of the injury. And so it's not uncommon, it's quite common when there are things like this from a trial court's position, is that the attorneys reserve that issue if there's potentially a claim, a potential claim. And so here there was litigation, it got dismissed, as you say. There was an appeal, and you say your client didn't know there was an appeal, but there are appeals, okay? And sometimes they're successful. Correct. And so this one was successful. Correct. But there was knowledge of the claim of the injury, knowledge of the initial lawsuit. And yet nothing's put in the, the whole divorce case is over, and nothing's put in that divorce case, and then over two years goes by. I mean, the reason for a 1401 or a two year period is for now, for finality purposes. Correct. And again, finality purposes apply when there is not something that shocks your conscience. And this would shock my conscience, where a multi, or a sizable settlement agreement is received by one party and the other one's out. So I see that's not the law of finality. It's something you feel really bad that the statute of limitations is wrong. You're right, Judge. If there was something in that marital settlement agreement that said, there's a PI case, it may be nominal, but the wife waives any right to it. That's a knowledge or a knowing waiver of a right. We don't have that in this case. What we have is a personal injury lawsuit goes to trial. It's tried. A directive verdict is entered in favor of the defendant. My client, the wife, is not, technically, is not a party to this litigation and is not a client of the attorney. She is given no information, no knowledge, no communication that in fact, yes, I think that the court's decision was improper, we are going to appeal their grant of the motions and limited. She had none of this knowledge. And what we stated in our petition was the husband had said yes, that the case was lost. That's the last two minutes. I just have a question. But this case had gone on, in some way, shape, or form, from the ten years from the day of the injury until the dissolution. Procedurally, had it been dismissed before, or had it, before this, did she know that this is a long drawn out process, and just because it had been dismissed didn't mean it was over? She believed it was over, Your Honor, and the reason is the injury was in 1993, or the case was filed in December of 1993. It reached a trial stage by 1998 in February or April, February. And in February of 1998, they voluntarily non-suited it, meaning the husband's attorney and the husband. And refiled it two months later, because there were other injuries that the husband suffered when he returned to work in 2000, I'm sorry, in 1994 and 1995. So they pled that second lawsuit in two counts. Count one is for the new injuries, and count two is for the old injuries. The court dismissed count two, stating that under the federal statute that that personal injury case was filed, the statute of limitations does not toll, and you cannot refile it under the Illinois statute, which gives individuals one year to refile cases that they voluntarily non-suit. So they lost that count two part. That went up on appeal. That was denied, or sent back, and they tried the count one, which was the injuries from 1994 and 1995, having lost the injuries from 1993. And in May of 2003, that case was again went to trial, and a verdict was directed, a finding was made in favor of the defendants. That was appealed, and that came back in 2006, and the case was given new case numbers again, I think two, three, four times, as explained in the statement of facts. And in May, June, July, August, there was discussions about a settlement, which we believe was finally given and agreed to in August of 2009. Is there, do you have any case that deals with, I mean, we were talking about the knowledge of something, and this is knowledge of a claim. Your client had knowledge of a claim before the divorce case. Right. At that time, she was aware that it was dismissed. Yes. Okay. But she had knowledge of the claim. Correct. Yet nothing appears in the divorce judgment about that claim. Because the case was tried and dismissed. Okay. But there was a claim. So it's not the knowledge of what that we're talking about under these kinds of cases is not about all the legal knowledge about what happens. It's about claims and, you know, or pieces of property or things of value. So there was knowledge of a claim. During the marriage, but at the time of the dissolution of marriage, it was believed that claim was no longer existing and was done. Was that reasonable legally to have that position? Legally, in my sense, I believe it was. Because, again, as I explained, the wife was not a client of the attorney. The attorney did not tell the wife that, yes, we're going to appeal this case. And the husband told her that this case is done. Thank you. Thank you, Your Honor.  Good, please, the court. Good afternoon. Gee, I wish I knew that that little Microsoft stock was going to get valuable in the future. I think that's what we have here. When you look at what, in the record, Joanne Ballack said about what she knew at various and sundry times, and look at what Mr. Nolk said in his affidavits, clearly, Joanne Nolk's had knowledge of the pendency of the claim before the dismissal. And Mr. Nolk's maintained, had knowledge of the appeal and the possibility that it would come back if the appeal were successful. But she didn't believe it would. She thought it was worthless. She thought she'd never get any money out of it. And that the whole issue was just not worth talking about. Ms. Nolk's, when they were married, there's a lot of kind of extraneous facts that were tossed in here that really aren't in the record about paying medical bills and things like that. Mr. Nolk says, the case was discussed. She said it's never going to be worth anything. He specifically says that at the meeting they had to iron out the agreement, she said, good luck, I hope you get something out of it some day. She denies it. Does she not, or does she? She says she has, at one point she says she had limited knowledge of the claim. At another point, she said, well, I didn't know anything about it. There was a subpoena in August of six. There was another one in 09 that she admits to, for sure. The trial court considered all these things, and those are all fact issues. And the issue doesn't usually boil down to, was there, did she know at the time of the divorce, perhaps? Or did she know in 2006? And they're admitting, for the purposes of this argument at least, that she had noticed in 2006. In 2006. And so, I mean, if she did, what is the legal effect of that? I mean, that's what we're really talking about. We're not talking about he thinks she was there, and she knew, and she said. Right, I mean, I can't remember, but I don't think so. Yeah, I mean, that's for jury, but we're not obviously there. Well, I just want to back up. In a 2619, the court can make findings fast, and I think Judge Kern did. To a certain extent, in order to deal with the issue of unconscionability. He's saying, there was nothing unconscionable about this. It was up front at the beginning. He didn't hide it from her. He didn't attempt to conceal it. And he certainly didn't have any duty, after they were divorced, to keep her apprised of what was going on. There was a waiver in the agreement, in the judgment order. There was a waiver of any claims not specifically put in here. Yes, admitting, let's say he fraudulently concealed it, but she definitely knew by August of 06. And even all that other stuff being true, the two years starts to run by. And her excuses for not doing it then are, well, I still didn't think. There was no monetary value to it at the time. I mean, how can you say you didn't know about it and say, well, I didn't think it had any monetary value, and I didn't think my case was right. At the time, is one of the other phrases that's used. I mean, she had a lawyer in the divorce. She went and got a lawyer. When? When she thought there was some money there. When it finally became worth something. I mean, even under that kind of a rubric, it's a change in circumstance, which is not a basis for 1401. It's not, it doesn't say that there was any kind of fraudulent concealment. There was no fraud on her at all. It was, I didn't think this was worth anything. I didn't think it would ever be worth anything. When it finally became worth something, I thought I'd take a shot at it. And you can't do that. I mean, you might have an argument within two years, you know, to say, well, vacate it and, and let's look, you know, let's have some kind of hearing about what did I know and is it untouchable? But as Judge Kramer found here, we don't even get that far. Because once you knew, just because you didn't appreciate, I mean, I don't understand how someone can say, well, I didn't know that I could bring the thing in. And then later, once there's money there, say, well, then I figure, well, maybe I can bring it in. I mean, I disagree that a personal injury case has no value in itself or, or, or, or verdict. You know, there's a lot of loan companies that would be very surprised at that. It's a chosen action. It may or may not have value. She didn't think it had value. She made a choice. She said, take it, good luck. I'm getting 18,000 out of the house regardless of whether you sell it for five bucks or five million bucks. Well, it's never been specifically mentioned in the divorce document. It was never mentioned specifically in the divorce document. There was a standard language that any other claims to any property, you know, the standard, standard waiver, standard waiver of any other claims without a waiver. Right. No different from, again, you know, husband and wife, he buys a lot on a little lake. You know, she doesn't think it's worth anything. Don't worry about it. It's not mentioned in the property agreement. It's in his name. All of a sudden, you know, they're building a big marina and they're going to put up luxury condos and your lot is worth a lot of money. She can't come back two years later and say, oh, well, it wasn't worth anything at the time. Now it's worth something. Now I want half of it. It was a marital asset. Well, you know, yes, but it was disposed of in the way many of these things are disposed of. You, you list the important things. You maybe work out, you know, you don't list the furniture. You know, you work out who gets the couch and who gets the recliner. But anything else, that's it. It's over. It's final. And there was no unconscionability just because something became suddenly worth a whole lot more money. This isn't a lottery ticket that was purchased during the marriage. This was a personal injury action. A FLA case, actually, that she had, according to Noak's basic knowledge of all the way through, knew about the appeal, knew he was going to keep trying. Told her at the meeting that they had prior to signing off on the agreement. And she responded, you know, good luck. I hope you get something. There's a contest on those facts. There's a contest on those facts, but as Justice Litton said, let's start with August of 06. And in that circumstance, we started August of 06, and everyone agrees that she may have had notice of a subpoena. The appellant is arguing that the discovery rule doesn't kick in until she realizes that she has an injury. And so I guess I just want your response to that. When do you think that it kicks in? I think that it kicks in when you acknowledge that the item that you're talking about is still alive. That it is an item. Because it's different from the discovery that you were injured. For example, one of the last cases where the young boy was suing his mother over the bank accounts. And he had inquired about the bank accounts, but didn't realize that he had been injured in that the money had been bled out over time. Well, that's a different situation because in that case, he knew he had the bank accounts, he knew he had the money coming before. What he didn't know was that it was gone. So the discovery that it's gone, which is the basis. When would there be a fraud? What's the fraud? What's the concealment? Not of the bank account, it's the concealment of the theft. So once you discover a theft, then the clock starts to run. Here, she's saying, well, I want to change the marital agreement. I want a new wording in it, because I didn't know about it. Well, if you didn't know about it, that's fine, but she didn't know about it. And so that's the thing. When she discovers the thing, August of 06, then the two years has to start running. And her excuses, and I mean they're there in the record, her excuses are there. So she didn't, I don't think the excuses are- Well, she knew about his injury from the very beginning, from the date of his injury. And I'm sure he knew about his complaints prior to his actually having the initial carpal tunnel surgery, or initially being off because of the carpal tunnel. And what did she know about his first filing of a claim? She was aware of it. She, I mean, I had met her. She had been to our offices. She gave a deposition in the first case. In the case, in the first onslaught of discovery, I believe she gave a deposition. Is that in the divorce case or in this case? In his FELA case. And she was technically the owner of JMS Maintenance Services, which was a business that he worked part-time for and helped in, especially after he left Amtrak, after they fired him from Amtrak. So there were a number of subpoenas to that business to get records. Because they wanted to know what he was doing. Onslaught of discovery, that's the term, yeah. And I'll just, I don't think being dismissed twice is numerous. One count was dismissed at one point in time, and the other one was a directed verdict. We were fortunate. We made some good law in the second appeal. And we were successful in going back and finally negotiating a settlement. It's just, to come back all these years later and say, well, half of that's mine, after they worked everything out and the settlement, they were both represented by counsel. They had the opportunity to do discovery. Her attorney could have sent interrogatories, standard marital interrogatories would have disclosed the pendency of the suit. If there was any question, all you gotta do is get to a computer and check it out. They don't deny that they were aware a suit got dismissed before the judgment, right? There's no denial of that. I believe, there's no question that she knew the suit was dismissed at trial. That was prior to the judgment of divorce. That was prior to the judgment of divorce, and the appellate decision was after the judgment of divorce. The mandate came down, well, the opinion was stated afterwards. So, it just does not seem to me that you can make something unconscionable by changed circumstances. I don't think that's the law that, certainly not this district, and no district that I'm aware of in the state follows, where you can come in and say, except as to matters of support and child expenses and things like that. You can't come back and say, well, you've got more money now, I want a bigger piece of these. But, as Justice Carter says, there's gotta be a finality to these things at some point in time. And the reasons to reopen them are well litigated. I mean, there are lots and lots of cases of situations where people have made mistakes, and they're corrected. Or people have defrauded people, and they're taken care of. They're punished, but the things are corrected that are wrong. Nothing here was done wrong. No one did anything wrong to anybody here. And I think it would be unjust to make Mr. Noakes give up half of his money when Joanne. Didn't think it was going to be worth anything. Didn't think it was worth mentioning in the agreement to reserve it. Didn't even think it was worth mentioning when she found it was pending again. Not until the money came in. And again, I just end by saying, gee, I wish that Microsoft stopped. I wish I knew about it beforehand. And I think that's kind of what she's saying here, and I don't think there's a good excuse for it. Thank you very much. Thank you, Councilman. Thank you, Councilman. Justices, I think that there's some statements in this case that should not have been made. And I think what counsel was saying to you when he was arguing is that at the time of the marital settlement agreement, Joanna Noakes knew about the workman's comp or the personal injury case, as we may call it, the injuries were sustained in his job or in his employment. And that is completely false and completely untrue. And there's nothing in any documents in this case that support that. And in fact, I direct the attention to my brief in the appendix, page two, paragraph seven. Again, this case is before you on a motion, and I'm not sure the case law is clear now. What do we call it, a motion to vacate, a motion to modify, a motion to reform? And this is what we need the appellate court for, for direction. As the Hall case provides, that I provided to your honors, or made in arguments in my brief. We're not trying to vacate the judgment of dissolution of marriage. We're trying to modify the marital settlement agreement so that it is fair and not unconscionable. And again, there was a two- Let's get back to this. I know you discussed it in your opening argument. But what is, get me to the point of unconscionability. You've got the two years, it goes by, and this is your exceptional argument. What exactly was unconscionable? Just assuming now, she didn't know in 2006, which is- And I would say, if I may- For the sake of argument, you're- That's wrong, and I'll say why that's wrong. She didn't learn about it until May of 2009. And- But you told me earlier that, for the sake of argument, for the sake of this motion- Right. That you were, you were saying, okay, let's just assume she had noticed and do that. And now, your honor, I'm stating that that's not true. And what I'm gonna do is direct your attention to facts and pleadings that I provided to the court. And when the court was ruling on the motion to dismiss, it is to look at all the facts pled and alight most favorable to the pleading party, which in this case is Joanne Knowles. There is not supposed to be a question of fact that is determined by a motion. And in that particular petition, I state in paragraph 782, page 82, that at the time of the settlement agreement, or before the settlement agreement, Dwayne Knowles never told Joanne Knowles that she, that the personal injury case was being appealed and just stated to her that the personal injury case was dismissed. And in the, prior to the paragraph, I state that at the time of the settlement agreement and the prove of, Joanne Knowles did not know about the personal injury case. She, she knew that it was dismissed and that it was no longer pending. And then we go to the affidavit that we filed in support of- Step back for a second. She knew at the time of the divorce that there was a claim and that it was dismissed, right? And no longer pending. And that, that admittedly is what she knew. That is what she knew. That's what I wrote in paragraph seven of the motion. But it is substantiated in her affidavit that we attached to this motion and filed with the court. And if you look at page A17, or appendix page 17, her affidavit explains clearly when she received the subpoena. In May of 2009, it directed her appearance to come to court. She was shocked. What am I in court for? What's this all about? She made a telephone call to the husband's parents and said, hey, did you know anything about this personal injury case? They informed her, no, we didn't know anything about the personal injury case. She said, neither did I. What do they want from me? Why do they want these records? Paragraph eight, she then called Dwayne Knowles, the husband, and asked him about the case. And that's when she finally found out that there was a case pending. It wasn't until 2009. Now, we take this in the light most favorable to the movement, in this case, the wife. The motion to dismiss should not have been granted. She denied in the affidavit that she received a subpoena in 2006, or some kind of notice. When this affidavit was- I mean, I heard, because we're back, and I felt badly because Mr. Casey didn't have the ability to respond to that argument, because you had previously said that it didn't matter, because you were basing your argument on the purposes of the argument, that she did get notice in 2006, and he wasn't able to respond to what you're saying now, or what the reader's saying, or at least that she didn't, and this factual question. And I would state that that is not correct, Your Honor, and the reason it is not correct is because this affidavit was filed before he was even in the case. He knew of this affidavit- I mean, here today in this appeal, right now, 20 minutes ago, you were saying it doesn't matter whether she knew or not in 2006. Right, and I'm changing that argument to state to the court that this is the reason we're here, that there are considerations of facts that should not be considered. If we take into consideration, no, the husband says she knew about it in 2006, and the wife says, no, I didn't know about it until 2009, that is a question of fact. And again, it should not be the basis of a 619 motion to dismiss. There should be an evidentiary hearing to allow both parties to present evidence to present and prove their allegations. Counsel, that's one minute. And again, that was the basis of the 2619 motion, but my brief goes on to make further arguments, as Your Honor stated, and the reason is because I don't want to be back here, although I enjoy the opportunity to be here today. I think that there's a lot of problems with a lot of the cases that I've handled with trying to amend marital settlement agreements, and the courts are kind of stuck on the idea that, hey, if you don't prove the elements under 214.01, you're out of gas. And I don't think that's fair, and I don't think that's accurate. I don't think that's the way the law is written, because the law is written in 502, where you can look at also whether or not the agreement is unconscionable. And in 510, it states that you can look to other issues in the Illinois law. And 502 is an issue in the Illinois law. But what fact makes this unconscionable? That the husband has a substantial workman's comp settlement award that was granted. When did he get that award? In, I believe, the check was held up for some time while this case was pending, so he didn't get it until June of 2010. And the wife, again, as I explained in the petition- And so what makes the earlier divorce unconscionable is he finally got successful in the claim. Correct, and he was compensated for an injury that the wife also sustained damages in. And again, as I explained, 1993, 1994, 1995, 1996, the whole time period, she had to sustain the bill, support his medical bills, and to support those two individuals. Well, I mean, that's why I keep on coming back to my question. Really, for 1401 purposes and for purposes of these kinds of attempts to open up a divorce judgment, it's when were you aware of a claim, not a successful claim, whether when you were aware of the injury and the claim for the injury. She was aware of the claim before the divorce was entered. No. She was aware of a claim that got dismissed. No. In your affidavit, the workers' claim was never discussed between Dana and me, nor was it mentioned in the Marital Asylum Agreement, as it was my belief, okay, that Duane and I lost the workers' compensation case. So she thought she, that's aware of a claim. That's a statement in the affidavit. My belief was formed in the summer of 2004 when Duane Oakes stated to me that we lost the workers' compensation case. That wasn't a false statement. They had lost it at the trial. Well, Judge, I would ask the court to consider when the appellate court reverses the dismissal, that becomes a new claim. That becomes a different fact. No, what claim is there? The claim is the injury. Claim is the injury, but- Was there a different injury that was not part of the injury that was dismissed earlier that she was aware of? No, but we're stating that the claim here is the financial gain. It is not the injury. It is the money that results to compensate before that injury. And what I'm saying to the court is, at the time this marital settlement agreement was entered, there was no knowledge that that case could be revived and later in the future would be revived. About this time. And again, what I'm- I'm a little worried that Mr. Ocasek hasn't had a chance to respond to this changed argument about the fact of the, I don't know. Would you like a couple of minutes to? I mean, I know it's highly unusual, but I just, I mean, I. You know, I don't, I don't, as to the unconscionability and the subsequent- No, no, no, what I'm talking about is, is the statement now that the 2006 notice is that she does deny it. She only accepts the 2009 notice, and therefore there's a fact issue. And that's what we should be relying on. I don't know, I'm not sure. I believe that was argued to Judge Cramer. Judge Cramer had in front of him Dwayne's affidavit, Dwayne Noakes' affidavit, which said she did know about the August 6th, and that the August 6th, you know, was put in. And, August of 06, I'm sorry. And her affidavit that she didn't know about it until May or April of 2009. He also had her other statements in which she indicated she had some limited knowledge of the status of the claim at the time of the divorce. And that after she got the August subpoena, she did not feel that it was right, or that her claim was right, that she was able to make any kind of- The 06. Pardon? The 06. The 06, the August 06. So, Judge Cramer had in front of him contradictory testimony as to what she knew about the August 06 subpoena. Under 2619, he can address conflicting testimony. You know, a motion is supposed to be supported by affidavit, but under 2619, counter affidavits and other evidence can be brought in and considered by the court. And the court can rule, or the court can defer and deny the motion, allow it to be put in as an affirmative defense, and then have some type of further- There can be a fact-finding in a 619 motion. Yes, there can be fact-finding. There can be a- A reality finding between two competing affidavits. Yeah, the court is able to do that. And I, because of the conflicting affidavits when we had the hearing, I went back and checked 2619 just to make sure. The court has the option. It doesn't have to, and it may decide that it's too conflicting and go for an evidentiary hearing. But you're saying that under 619, you can have competing affidavits with contrary statements of fact. And the trial judge in the 619 motion can choose one affidavit or the other and say, I believe this one, not that one. I think he can take all of the facts. It wasn't just the two competing affidavits. There were other things that Joanne Ballack had said in the motion that indicated she did have knowledge as of 06. And it was not really an issue. Well, where is that, that she had knowledge of 06? It's in, if it's not the original petition to modify, it's an argument in one of the sections of- In your statement of facts where you say that Noakes claims that your client- Correct. Claims that Ballack knew of the reinstatement of cases of August 06, which he received a subpoena for work records. And you cite to the record on C182 to 184, that's, I take it, your client's statement. That's my client's affidavit. He knew, he says that he knew that she had gotten a subpoena and she had inquired why, they're asking for employment records. In her affidavit on A17, she said that she knew nothing about the most recent appeal until she received a subpoena from Amtrak's attorneys that was addressed. And paragraph five doesn't give a date of that subpoena. Then she says in paragraph six, I was shocked when I received a subpoena as demanded by my parents in 09. Correct. Yeah. But she says on paragraph four that she was aware of the workers' comp case. She makes various misunderstatements that indicate her knowledge at least of the claim pending, at least of the appeal. And when that's all taken into consideration, the entire argument I think of unconscionability and when does this two year start to run? I think you have to start, I think it starts the day of the judgment. I think you have to really say August of 06, and the 09 one just doesn't make any sense. Well, I appreciate your responding, and I think it's an unusual thing, but I think in light of what you've said. Do you want a minute to respond to everybody else? I think that it's all in the record here. Okay. Everybody face, then thank you for your patience. We will render a decision with dispatch.